Filed 5/15/13  Kull + Hall v. Karimi CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KULL + HALL LLP et al., | B236951 |
| Plaintiffs, Cross-defendants, and Respondents, | (Los Angeles County Super. Ct. No. SC105372) |
| v. | |
| MICHAEL A. KARIMI, | |
| Defendant, Cross-complainant, and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Norman P. Tarle, Judge.  Affirmed as modified.

Ferguson Case Orr Paterson and Wendy C. Lascher for Defendant, Cross-complainant, and Appellant.

Carlsmith Ball and Albert H. Ebright for Plaintiffs, Cross-defendants, and Respondents.

Appellant Michael A. Karimi appeals from the judgment entered in favor of respondents Kull + Hull LLP (K+H) and Robert F. Kull in an action against Karimi for unpaid legal fees. Karimi, who had filed a cross-complaint for breach of fiduciary duty, legal malpractice, unjust enrichment, and other claims, contends the jury's favorable finding on the breach of fiduciary duty claim is fatally inconsistent with its unfavorable finding on the legal malpractice cause of action and mandates a new trial. He also contends the trial court's award of prejudgment interest to K+H was improper. We conclude the findings on the cross-complaint are not inconsistent, but that the award of prejudgment interest must be stricken.

## BACKGROUND

Kull and Karimi had a business relationship that preceded the events of this case. They first met sometime after 1978 when Karimi's company, Trans Telecom, installed a telephone system in Kull's home. A few years later, Kull began representing Karimi and Trans Telecom in various legal matters. Trans Telecom installed telephone systems in Kull's law offices and a restaurant that he partially owned.

This fee dispute primarily involves the lawsuit filed by Karimi against his parents and siblings in 2007 (the *Karimi* action).[1] When Kull drafted the complaint in the *Karimi* action, he was a partner at Carlsmith Ball LLP (Carlsmith). However, Kull left to form his own firm, K+H, while the *Karimi* action was pending and he brought the *Karimi* action with him to the new firm. Although Karimi never signed K+H's proposed fee agreement for the *Karimi* action, Kull continued to represent him in that action.

[1] After Karimi purchased a home in his parents' names, a family dispute arose as to (1) whether Karimi's father had promised to reimburse him, and (2) whether Karimi's sister had interfered with his attempts to obtain reimbursement. In 2007, Kull began representing Karimi in that dispute. Kull filed the complaint in the *Karimi* action after attempts to resolve the dispute informally had failed. Karimi and his family participated in mediation but to no avail. The *Karimi* action went to trial in 2008, but ended in a mistrial when the trial was not completed within 10 days. A new trial date was set for mid-2009.

In July 2009, Karimi accepted a $20,000 settlement offer from his parents and siblings in the *Karimi* action shortly before the second trial date. On August 20, 2009, K+H sent Karimi a final invoice for $74,740.87 that Karimi refused to pay. The final invoice included charges of $56,322.34 for the *Karimi* action and other sums for two other matters: $18,202.53 for the RJG case, and $216 for the Trans Telecom case.[2]

In October 2009, K+H and Kull filed the present action against Karimi for attorney fees, promissory fraud, and fraudulent concealment. In April 2010, Karimi filed a cross-complaint for breach of fiduciary duty, legal malpractice, unjust enrichment, and other claims.

Based on a quantum meruit theory, the jury found that K+H was entitled to attorney fees in two matters: (1) $56,322.34 in attorney fees plus $1,059 in court reporter fees for the *Karimi* action; and (2) $18,202.53 in attorney fees for the RJG case. To those fees, which totaled $75,583, the trial court added $216 in stipulated attorney fees for the Trans Telecom case, which resulted in a total fee award of $75,799. The jury found for Karimi on his cross-claims for breach of fiduciary duty and unjust enrichment, for which he was awarded $15,000 and $2,000, respectively.

Karimi moved for judgment notwithstanding the verdict (JNOV) and new trial. He argued that because the jury's finding of breach of fiduciary duty was based on Kull's failure to inform him of a $150,000 settlement offer in the Karimi action, his damages for breach of fiduciary duty should have been $130,000 (the difference between the $150,000 settlement offer that allegedly was not communicated and the $20,000 offer that was accepted) rather than $15,000.

Kull and K+H sought to set aside Karimi's $15,000 damages award in their motion for JNOV. They argued that the finding of liability for breach of fiduciary duty was inconsistent with the finding of no liability for malpractice. They sought to set aside

---

[2]     The parties stipulated that the $216 fee for the Trans Telecom case would not be submitted to the jury, but would be added to the verdict. The fees for the RJG case are not disputed on appeal.

the $15,000 damages award on the cross-complaint as inconsistent with the jury's rejection of the malpractice claim.

The trial court denied both motions for JNOV and Karimi's motion for new trial. It stated that although the jury had no obligation to explain its finding of breach of fiduciary duty, Karimi's testimony had provided a "host of" reasons, "many of which are listed in the cross-complaint."[3] The trial court noted that "[m]any of the acts and omissions listed in the cross-complaint and testified to at trial by the cross-complainant, were not quantified during the testimony or trial arguments, and it was up to the jury to determine the monetary value of any deficiency once they determined that there was a breach of a fiduciary duty. A reasonable interpretation of the jury's decision, supported by substantial evidence, reflects their determination that there were one or more breaches that were relatively minor, amounting to a value of $15,000."

The trial court granted K+H's motion for prejudgment interest from August 20, 2009, the date of the final invoice, to September 1, 2011, the date of the hearing on the motions for JNOV and new trial. After adding $15,344.38 in prejudgment interest to the $75,799 fee award, which resulted in a total fee award of $91,143.38, the court deducted the $15,000 award for breach of fiduciary duty against Kull and the $2,000 award for unjust enrichment against K+H, which resulted in a net judgment, exclusive of costs, of $74,143.38.

**DISCUSSION**

**I. The Liability Findings Are Not Inconsistent**

Karimi argues on appeal that the liability findings on the cross-complaint are inconsistent because he "did not ask the jury to award damages for any breach of fiduciary duty other than failure to convey the settlement offer." He contends that

---

**3** In his cross-complaint, Karimi alleged that Kull had breached his fiduciary duty by failing to respond to Karimi's questions and calls and failing to provide invoices within 10 days after receiving Karimi's demands for such.

4

"[e]ven where verdicts are supported by substantial evidence, if they are inconsistent they cannot stand, because a factfinder may not make inconsistent determinations of fact based on the same evidence. . . . This case is not about whether there is sufficient evidence to support the verdict. It is about the jury's apparent misunderstanding of the issues before it, evidenced by its conflicting liability findings."

In order to determine what issues were before the jury, we begin by examining the relevant jury instructions. The jury was instructed in relevant part that "[a]n attorney owes what is known as a fiduciary duty to his client. A fiduciary duty imposes on an attorney a duty to act with the utmost good faith in the best interest of his client. [¶] Rule 3-500 [of the California Rules of Professional Conduct] provides a member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed. [¶] A settlement offer, whether written or oral, by the opposing parties in a lawsuit is a significant development which a lawyer must promptly communicate to the client. Only the client can determine whether and how to respond to a settlement offer."

The jury was further instructed: "In California, attorneys are obligated to comply with the California Rules of Professional Conduct. These rules, among other things, define certain fiduciary duties of lawyers. A violation of such a rule which is the proximate result of harm to the client is a breach of fiduciary duty. [¶] Michael Karimi claims he was harmed because Mr. Kull breached a fiduciary duty. To establish this claim, Michael Karimi must prov[]e all the following: [¶] One, that Mr. Kull breached a fiduciary duty. [¶] Two, that Michael Karimi was harmed. [¶] Three, that Mr. Kull's conduct was a substantial factor in causing Michael Karimi's harm."

As to damages, the jury was instructed: "If you decide that Mr. Karimi has proved his claim against Robert Kull, you also must decide how much money will reasonably compensate Mr. Karimi for the harm. This compensation is called damages. The amount of damages must include an award for each item of harm that was caused by Robert Kull's wrongful conduct, even if the particular harm could not have been anticipated. [¶]

5

Mr. Karimi does not have to prove the exact amount of damages that will provide reasonable compensation for the harm; however, you must not speculate or guess in awarding damages."

As the above instructions make clear, the jury was asked to decide whether Kull's alleged failure to inform him of his brother's $150,000 settlement offer was a breach of fiduciary duty. However, this does not mean that the liability findings are inconsistent. As the trial court correctly pointed out in its denial of Karimi's motion for JNOV and new trial, there was evidence to support the breach of fiduciary duty finding that had nothing to do with the purported settlement offer.

Karimi testified, for example, that Kull failed to respond to his requests for detailed billing statements until two weeks before the trial date in this case. He testified that he had raised this issue while Kull was at Carlsmith, and again after Kull moved to K+H. Nevertheless, Kull did not provide the requested billing information until shortly before this trial began: "Q Did you complain? [¶] A Of course. [¶] Q Did Mr. Kull, during the time he represented you, provide greater detail in those bills? [¶] A When he was representing, no, he didn't. [¶] Q At some point did he break the bills down, putting in time segments for individual entries? [¶] A Yes, he did. [¶] Q When did he do that? [¶] A I think two weeks ago, three weeks ago. [¶] Q Just before the trial? [¶] A Yes. [¶] Q Did you object to some of Kull + Hall's charges and services? [¶] A I did have some objections, but I wanted for him to give me the detail billing so I can figure how much I should object to."

Karimi also described an instance when he had asked Kull to respond to his family's expert witness designation, but Kull had ignored his request until the time had expired, which added to his litigation expenses: "Q Did you raise an issue about a hearing Bob Kull failed to appear at? [¶] A Oh, yes. [¶] . . . [¶] Q . . . Was there an expert witness who you wanted to disqualify? [¶] A Yes. [¶] . . . [¶] . . . He filed — he didn't object to that expert witness, and then the other side said your time has expired. Then he had to file a motion for reconsideration, I guess. [¶] Q Did you object to being charged for that work? [¶] A Yes. [¶] Q Why did you think it was unfair for you to

have to pay for that work?  [¶]  A  Well, few reasons.  Number one, when he send me the designation, I shoot him an email saying, hey, this guy, you need to object because we consulted with him.  He has a lot of our information.  Practically same day.  He ignored it.  He didn't pay attention.  I even told him couple more times you need to object.  And then, eventually, time passed and he said I need to file a motion.  I go, it's — you are doing it on my dime.  You got to do it right.  Now you got to do double work.  It didn't make sense."

When the breach of fiduciary duty finding is viewed in light of Karimi's testimony that Kull had ignored his requests for detailed billing information and for a timely response to his family's expert witness designation, it is clear that Kull's liability for breach of fiduciary duty could reasonably have been based on conduct unrelated to the disputed settlement offer.  As a result, we reject Karimi's contention that the liability findings on the cross-complaint were fatally inconsistent.

## II.    The Prejudgment Interest Award Was Improper

Business and Professions Code section 6148 provides that attorney fee agreements in excess of $1,000 must be in writing.  Because there was no written fee agreement for the *Karimi* action, K+H was forced to rely on a quantum meruit theory to recover its fees.

Karimi contends that prejudgment interest on K+H's quantum meruit award was improper because the amount of attorney fees was never fixed by a written agreement and remained uncertain until the jury rendered its verdict.  K+H responds that "recovery of interest on the quantum meruit cause of action is permitted because the K+H claim was for a sum certain."

The award of prejudgment interest is governed by section 3287, subdivision (a) of the Civil Code (section 3287), which provides:  "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.  This section is applicable to recovery of damages and

7

interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

Under section 3287, "if the defendant does not know or cannot readily ascertain damages, it is incumbent on the plaintiff to provide the defendant with some statement and supporting data from which the defendant can make the necessary determination." (*Levy-Zentner Co. v. Southern Pac. Transportation Co*. (1977) 74 Cal.App.3d 762, 798.)

The evidence was undisputed that Karimi had requested detailed billing information for fees that were not covered by any written agreement. According to Karimi's testimony, the parties "never came to an agreement" as to Kull's hourly rate at K+H. Karimi testified that Kull kept "changing the rates" from $380 to $350 to $300 to $275. Although Karimi had sought written confirmation of the $275 hourly rate, he testified that he "didn't agree" to that rate, but simply wanted it in writing because Kull kept "changing his rates."

Without a written fee agreement setting forth Kull's hourly rate, K+H was forced to prove that its fees were reasonable. It is unclear how Karimi could be expected to know whether the fees set forth in the final billing statement were reasonable when, according to his testimony, his requests for detailed billing statements were ignored, his request to respond to his family's expert witness designation went unheeded until the time had expired, and Kull kept changing his billing rate.

We find the court's discussion of section 3287 in *Conderback, Inc. v. Standard Oil Co*. (1966) 239 Cal.App.2d 664 (*Conderback*) to be instructive: "Under this section interest cannot be awarded prior to judgment when the amount of damages cannot be ascertained except on conflicting evidence. [Citations.] The rationale of such rule is that where a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it. [Citations.] However, when the exact sum of the indebtedness is known or can be ascertained readily the reason suggested for the denial of the interest does not exist. [Citation.] If the amount owing can be calculated and determined from statements rendered by the plaintiff

8

to the defendant and those statements are found to be true and correct, it is a matter of mere calculation and prejudgment interest can be awarded. [Citation]" (*Id.* at pp. 689-690.)

The court in *Conderback* further stated that Standard Oil "could not determine what was owing until it had received from plaintiff some statement with supporting data from which it could make the determination. Conderback argues that after it presented its final bill in March 1963 it submitted its invoices, shop records and books to Standard. We are not persuaded that defendant was able to ascertain the exact amount due from this data, since plaintiff, who was presumably familiar with both its own data and its own pricing formula, arrived at several different results. Indeed, as previously mentioned, Conderback's principals, apparently concluding that their previous efforts at billing had not achieved certitude, as late as the latter part of January 1963 undertook a complete reauditing of the entire project. In the course of the reaudit, a Conderback accountant made a miscalculation resulting in a figure $16,652.35 in excess of the amount subsequently admitted by Conderback as the true amount. It is noteworthy that in its original complaint Conderback prayed for general damages in the sum of $139,256.92; in its amended complaint in the sum of $171,026.80; in its bill of particulars in the same amount; and that finally at the trial in June 1964, it amended its prayer to the sum of $154,374.45, for which a verdict was returned. We do not believe that under all the circumstances it can be said that the exact sum due Conderback could have been readily ascertained by Standard. We conclude that the allowance of interest prior to judgment was improper." (*Conderback*, *supra*, 239 Cal.App.2d at pp. 690-691, fn. omitted.)

Based on the evidence in this case, we find that as in *Conderback*, the exact sum due K+H could not have been readily ascertained by Karimi without a jury verdict. Accordingly, we conclude that the award of prejudgment interest was improper.

Finally, we decline respondents' invitation to award prejudgment interest pursuant to section 3287, subdivision (b). That subdivision was added in 1967 to allow an award of prejudgment interest, "but only for a limited time period and only if the trial court finds it reasonable in light of the factual circumstances of a particular case." (*Lewis C.*

9

*Nelson & Sons v. Clovis United Sch. Dist.* (2001) 90 Cal.App.4th 64, 69.)  Respondents cite no authority for the proposition that we may exercise our discretion at this juncture where they failed to ask the trial court to do so in the first instance.

## DISPOSITION

The award of prejudgment interest is stricken from the judgment.  The judgment, as modified, is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

10